UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| Kellar Covington, Jr., |
|---|
| **Plaintiff**, |
| v. |
| **Equifax Information Services, Inc.**, |
| **Defendant.** |

No. 18-15640-KM-MAH

**OPINION**

## KEVIN MCNULTY, U.S.D.J.:

Before the Court is the motion of defendant Equifax Information Services, Inc., ("Equifax") to dismiss the complaint of *pro se* plaintiff Kellar Covington, Jr. (DE 6). Covington asserts a violation of the Fair Credit Reporting Act ("FCRA") arising from the reporting of a "Chase Auto tradeline," a "Toyota Motor Credit Corp." tradeline, a Macy's tradeline, and a OneMain financial tradeline on his credit report. He also asserts that his bankruptcy tradeline remains on his credit report, even though his bankruptcy was discharged, and that he believes the Bankruptcy Court does not provide information to credit reporting agencies. Covington suggests that this also violates the FCRA.

Equifax moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule 12(b)(6). Equifax contends that Covington has failed to plead factually that there is an inaccuracy in his credit report, an essential element of an FCRA claim.

Additionally, Equifax points out that Covington has previously sued Equifax. *Covington v. Equifax Info. Servs., Inc.*, Civ. No. 16-8002 (D.N.J.). That matter was dismissed with prejudice after the parties resolved their dispute through a settlement agreement in which Covington agreed to release all claims against Equifax and acknowledged the accuracy of his credit report as of September 19, 2017. In particular, he certified that the information about the Toyota tradeline currently at issue here was accurate.

1

For the reasons provided below, Equifax's motion to dismiss is granted.

## I. Factual Allegations[1]

Covington asserts that he submitted letters "of erroneous accounts" to Equifax, a consumer reporting agency ("CRA"), for the purposes of having Equifax correct alleged inaccuracies in his credit report. (Compl ¶ 5).

First, on July 9, 2018, Covington sent a letter to Equifax that does not refer to a specific "erroneous account[]" but rather encloses "a copy of a letter from the Federal Trade Commission and other correspondence to them in reference to incomplete and missing information." (DE 1 at 9[2]). That FTC letter, dated July 6, 2018, however, merely referred Covington to the Consumer Financial Protection Bureau. It did not specifically address any of Covington's claims as they related to his credit report. (DE 1 at 10).

It appears that the "other correspondence" Covington sent to Equifax with his July 9, 2018 letter concerns a separate letter complaint submitted by Covington to the FTC on June 21, 2018. (DE 1 at 11). In the June 21, 2018 letter, Covington complained that Equifax had included an "incomplete item" on his credit report, that Equifax "said that they updated it," but "it still remains the same and they did not delete it." (*Id.*). Covington requested the FTC's assistance in fixing the "incomplete items" in his report. (*Id.*). Like the July 9, 2018 letter, the June 9, 2018 letter does not provide any other

---

[1] As required at this stage, the Court accepts all well-pleaded allegations as true. For ease of reference, certain key items from the record will be abbreviated as follows:

DE = docket entry number in this case;

Compl = Covington's complaint (DE 1);

DBr = Equifax's moving brief (DE 6);

PBr = Covington's opposition brief (DE 8);

Reply = Equifax's reply brief (DE 9).

[2] This number refers to the automatically generated ECF page number located in the top right-hand corner of the docket entry. Covington's complaint includes exhibits A though C, which were uploaded together with the complaint as one document.

2

information regarding what information in Covington's credit report he was disputing as "inaccurate" or "incomplete." (*See id.*).

On October 5, 2018, Covington sent a second letter to Equifax. This letter related to the Toyota tradeline. (DE 1 at 14). In that second letter, Covington stated that when he financed his "cars," he did so "[through] Lexus Financial Services," not Toyota. (*Id.*). The Lexus Financial Services credit, he wrote, was also under a different account number. (*Id.*). Covington requested that Equifax delete the Toyota account from his credit report. (*Id.*). Covington suggests that the Toyota tradeline either does not belong to him, was sold, or bears an incorrect account number. (DE 1 at 14, 15; DE 8 at 3).

With his October 5, 2018 letter, Covington appears to have also enclosed two additional letters. One was an August 11, 2018 letter addressed to "Toyota Motor Credit Corp" and "Lexus of Bridgewater," which disputed account numbers 20562G and 20562K on his credit report. (*See id.* at 15). In this letter, Covington stated that the vehicle was "purchased on or about 04/09/2011, financed by Toyota Motor Credit Corp.," was "repossessed in the state of New Jersey," and sold "on or about 03/07/2014." (DE 1 at 15). Covington requested proof that "the required notices" were "properly and timely" given under New Jersey law prior to repossession. (*Id.*). Covington asserts that he did not receive a response from Toyota. (*Id.* at 14). The second enclosure was a letter from Lexus dated October 5, 2018. (DE 1 at 17). That Lexus letter enclosed a copy of Covington's "Closed End Motor Vehicle Lease Agreement (contract)" for each of his vehicles. (*Id.*). Lexus also enclosed a copy of Covington's payment history for each account, and the "notice of cancellation" that was sent to Covington after he defaulted on payment. (*Id.*).[3]

Covington's complaint also contains allegations that are related to his bankruptcy. (Compl ¶¶ 7-8). On September 6, 2018, Covington sent a letter to the Bankruptcy Court requesting information about the Court's "procedure in

---

[3] Covington's exhibits include two notices of cancellation: the first for a 2009 Lexus RX 350, and the second for a 2011 LS 460 sedan. (DE 1 at 18-19).

3

responding to requests from" CRAs. (Compl ¶ 8; DE 1 at 26). The Court responded that it "does not provide any information to credit agencies" because information about bankruptcy proceedings is public. (*Id.*). Covington asserts that he "was left to question how and why" the bankruptcy tradeline "remains as reported" since the Court does not respond to CRAs. (Compl ¶ 7). Equifax reviewed the bankruptcy matter, updated Covington's credit report, and noted that his bankruptcy matter was "discharged." (DE 1 at 31). Covington does not dispute that his bankruptcy matter was discharged.

On November 2, 2018, Covington filed a complaint with this Court alleging violations of the FCRA under 15 U.S.C. § 1681e(b), which requires that CRAs use reasonable procedures to ensure maximum possible accuracy in consumer reports. (DE 1). On November 29, 2018, Equifax filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Covington has failed to plead an inaccuracy, an essential element of an FCRA claim. (DE 6). Additionally, Covington previously sued Equifax, and executed a settlement agreement that included a release. Equifax contends that Covington acknowledged the accuracy of the Toyota tradeline in that earlier settlement agreement. (DE 6-1).

## II. Standard

In considering a motion to dismiss a *pro se* complaint, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice . . . keeping in mind that *pro se* complaints in particular should be construed liberally." (citations omitted)). This does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . .

4

but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'").

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief" (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570. *See also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).

For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). "Complaints filed pro se are construed liberally, but even a pro se complaint must state a plausible claim for relief." *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) (citation and internal quotation marks omitted).

5

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (same). Moreover, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Bush v. City of Phila.*, 367 F. Supp. 2d 722, 725–26 (E.D. Pa. 2005) (quoting *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004)).

The affirmative defense of res judicata "may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x. 36, 38 (3d Cir. 2008). The party asserting the defense has the burden of proving that it applies to the situation at hand. *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984).

### III. Discussion

#### A. Fair Credit Reporting Act ("FCRA")

Congress enacted the FCRA "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010). The FCRA contains "provisions intended to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." *Id.* at 708. Under the FCRA, CRAs "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness."

6

*Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014). To meet the statutory aims of the FCRA, the FCRA imposes specific obligations on CRAs, furnishers, and other categories of persons not at issue here. *See generally* 15 U.S.C. § 1681 *et seq.*

Covington's complaint cites § 1681e(b), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A plaintiff asserting a violation of § 1681e(b) must plead the following four elements: (1) inaccurate information was included on his report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) that injury was caused by the inclusion of inaccurate information. *Cortez*, 617 F.3d at 708 (quoting *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).

Although §1681(a) is not cited in Covington's complaint, his allegations implicate that section, which requires CRAs to "conduct a reasonable reinvestigation" if a consumer notifies the CRA that he or she disputes information contained in his or her file. 15 U.S.C. § 1681i(a)(1)(A). Under § 1681i-a(1), after receiving notice of a dispute from a consumer, a CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item." 15 U.S.C. § 1681i-a(1). A consumer reporting agency is liable for failing to reinvestigate under § 1681i if it "had a duty to do so, and . . . would have discovered a discrepancy had it undertaken a reasonable investigation." *Cortez*, 617 F.3d at 713 (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)).

In addition, the CRA must provide notification of the dispute to the furnisher of the disputed information. 15 U.S.C. § 1681i(a)(2). Such notification by the CRA triggers the furnisher's obligation to conduct its own investigation. 15 U.S.C. § 1681s-2(b). The FCRA expressly creates a private right of action for

7

willful or negligent noncompliance with these requirements. 15 U.S.C. § 1681n & o.

As with § 1681e(b) claims, "[a] claim under 1681i will . . . fail if the consumer cannot show that the information in his or her file was inaccurate." *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 212 (E.D. Pa. 2007) (citing *Cushman*, 115 F.3d at 226-27); *see Kuehling v. Trans Union, LLC*, 137 F. App'x 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, Kuehling cannot establish that Trans Union violated the FCRA—either § 1681e(b) or § 1681i(a)(1)(A)."). Even "if the information is technically correct, it may nonetheless be inaccurate if, through omission, it 'create[s] a materially misleading impression.'" *Seamans*, 744 F.3d at 865 (alteration in original) (quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008)). The issue whether "technically correct" information was misleading in such a way that it could have been expected to have an adverse effect is generally a question for the jury. *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2014)).

### B. Analysis

#### i. The Chase Auto, Macy's, and OneMain Financial tradelines

Concerning the Chase Auto, Macy's, and OneMain Financial tradelines, Covington's complaint, however liberally construed, fails to state a claim under sections 1681e(b) and 1681i. As a threshold issue, the complaint fails to make any factual allegations beyond an assertion that certain tradelines remain on Covington's credit report. Covington fails to state factually how, why, or in what manner the information about these tradelines is inaccurate. Covington's complaint suggests, and he argues in his opposition brief, that the accounts associated with the Chase Auto, Macy's, and OneMain Financial tradelines on his credit report may have been sold. (DE 8 at 3). But there is nothing improper under the FCRA by continuing to accurately list closed accounts so long as

8

Equifax complies with § 1681c(a)(4). Covington does not claim that Equifax failed to comply with § 1681c(a)(4).

Covington has therefore not alleged facts showing that the information reported about him concerning these tradelines is inaccurate or creates a "materially misleading impression." *Seamans*, 744 F.3d at 865.

Covington separately suggests that "the 'furnisher' was unable to verify the accounts or the 'furnisher' thereby had misrepresented to Equifax the status of the accounts in violation of Section 1681e(b)." (DE 8 at 3). But there are no factual allegations that Covington notified Equifax of a dispute concerning the Chase Auto, Macy's, and OneMain Financial tradelines. Nor are there any factual allegations to support a reasonable inference that Equifax failed to investigate and modify the allegedly inaccurate information.

Because Covington fails to plead sufficient facts, Covington's claims as to these tradelines are dismissed without prejudice.

### ii. "Toyota Motor Credit Corp." tradeline

Covington's claim concerning the Toyota tradeline appears to be either that he disputes that he financed his cars through Toyota, that the vehicles were sold, or that the wrong account numbers are listed on his credit report. (DE 8 at 3). Under any theory, Covington's claims are dismissed with prejudice under the doctrine of claim preclusion.

Claim preclusion bars suit when three elements are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citing *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)).

First, a dismissal with prejudice arising out of a settlement agreement operates as a final judgment for res judicata purposes. *Toscano*, 288 F. App'x at 38; *see also Nobel v. Morchesky*, 697 F.2d 97, 102 n. 8 (3d Cir. 1982) (holding that a settlement agreement can preclude later actions when the district court terminates the action with prejudice). The signed settlement

agreement dismissing *Covington v. Equifax Info. Servs., Inc.*, Civ. No. 16-8002 (D.N.J.) with prejudice is therefore a final judgment on the merits.

Second, it is undisputed that the parties are the same. In both the prior action and this one, Covington is the plaintiff and Equifax is the defendant.

Third, this matter involves the same cause of action as the earlier case. Both complaints asserted that the defendant willfully and negligently failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. §1681e(b).

Covington suggests that the tradeline is inaccurate because he financed his vehicles through Lexus, (DE 1 at 14), and because the listings of Toyota account numbers 20562G and 20562K are incorrect. But this is the same account information listed on the credit report attached to the September 26, 2017 settlement agreement; it was part of the settlement that, by signing the settlement agreement, Covington agreed that the very same information was accurate. (DE 6-1 at 4, 9). Covington also appears to argue that the Toyota tradeline should be removed from his credit report because this vehicle was sold "on or about 03/07/2014." (DE 1 at 15). As noted above, the fact that an account subsequently closed continues to be listed on a credit report is not, without more, a violation of the FCRA. Moreover, accepting these facts as true, as this court must, the date of sale was known at the time the September 26, 2017 settlement agreement was signed.

For these reasons, the Court finds that Covington's claim regarding the Toyota tradeline is barred under the doctrine of claim preclusion and is therefore dismissed with prejudice.

### iii. Bankruptcy tradeline

Covington asserts with respect to the bankruptcy tradeline that Equifax failed to "verify the accuracy of information about" a bankruptcy proceeding appearing on his credit report. (Compl ¶¶ 7–8). Covington does not claim that Equifax has reported inaccurate information concerning the bankruptcy. For

instance, Covington does not dispute that his bankruptcy was discharged. (DE 1 at 31).

Nevertheless, according to Covington, Equifax failed to verify the bankruptcy tradeline in accordance with § 1681(e). The logic is obscure. Covington states that he asked the Bankruptcy Court how they respond to requests from credit agencies; the Bankruptcy Court allegedly replied that it "does not provide any information to credit agencies." (DE at 26). Covington omits that the response went on to explain the reason: namely, that "All bankruptcies are public information." (*Id.*). Covington does not otherwise allege any fact that would support an inference that Equifax failed to follow reasonable procedures to assure the maximum possible accuracy of his credit report with respect to the bankruptcy.[4]

For these reasons, Covington's claim as to the bankruptcy tradeline is dismissed without prejudice.

### IV. Conclusion

For the reasons provided above, Equifax's motion to dismiss is granted. (DE 6).

The claim that Equifax violated the FCRA based on the Toyota tradeline is dismissed with prejudice.

The remaining claims regarding violations of the FCRA are dismissed without prejudice.

An appropriate order follows.

Dated: September 6, 2019

*Kevin McNulty*
**Kevin McNulty**
**United States District Judge**

---

[4] In fact, his allegations suggest the opposite. The public availability of bankruptcy information suggests that Equifax performed some due diligence in order to obtain the information about Covington's bankruptcy that went into the report.

11