UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KELLAR COVINGTON, JR.

        Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES, INC.,

        Defendant.

Civil Action No. 2:18-15640 (KM) (MAH)

OPINION

## I. INTRODUCTION

This matter comes before the Court by way of *pro se* Plaintiff Kellar Covington, Jr.'s Amended Complaint, which the Court has construed as a Motion to Amend the Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. *See* Am. Compl., Sept. 26, 2019, D.E.18; Order, Oct. 7, 2019, D.E. 19. Defendant Equifax Information Services LLC ("Equifax") opposes Plaintiff's submission on the basis of futility. *See* Def.'s Opp. Br. at 1, Oct. 10, 2019, D.E. 20. For the reasons that follow, the Court denies Plaintiff leave to file the Amended Complaint.

## II. BACKGROUND

Plaintiff instituted this civil action against Equifax to obtain damages and injunctive relief under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 to 1681x, in connection with alleged inaccuracies in Equifax's reporting of a bankruptcy and Chase Auto, Toyota, Macy's, and OneMain tradelines that appear on his credit report. *See* Compl., ¶¶ 1, 5-7, 10, Nov. 2, 2018, D.E. 1. Plaintiff contended that Equifax prepared "a patently false consumer report" because the referenced tradelines had been sold and were unverified. *Id.* ¶¶ 10-11. Plaintiff alleged that Equifax "willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in

1

violation of [15 U.S.C. § 1681e(b)]." *Id.* ¶ 12.  He further asserted that Equifax's "willful and/or negligent refusal to follow reasonable procedures to assure 'maximum possible accuracy' as specifically mandated by the FCRA" prevented him from obtaining credit, caused him reputational harm and emotional distress, and caused him to incur unspecified out-of-pocket expenses.  *Id.*¶¶ 14-15.

Plaintiff attached several exhibits to the Complaint to buttress his allegations.  Plaintiff first included a handwritten letter to Equifax dated July 9, 2018, that in turn enclosed correspondence to and from the Federal Trade Commission ("FTC"), dated June 21, 2018 and July 6, 2018, respectively.  *See id.*, Ex. A, D.E. 1 at 9-13.[1]  Plaintiff stated to Equifax that the FTC communications concern "incomplete and missing information on an item on [his] credit report." *Id.*, D.E. 1 at 9.  None of the communications specify what information was incomplete, however. Plaintiff wrote to the FTC that he "disputed an incomplete item that was being reported on [his] credit report by Equifax," and that Equifax had failed to delete the notation.  *Id.*, D.E. 1 at 11.  In the FTC's response, it simply referred Plaintiff to the Consumer Financial Protection Bureau.  *Id.*, D.E. 1 at 10.

Plaintiff next attached a letter mailed to Equifax on October 5, 2018 that concerned the Toyota tradeline.  *Id.*, D.E. 1 at 14 ("October 5, 2018, Equifax Letter").  Plaintiff therein requested that Equifax delete the accounts stated on his credit report because they contained inaccurate information concerning the source of the financing.  *Id.*  Plaintiff stated that he contacted both Toyota Motor Credit Corp. and Lexis Financial Services for verification, and it appears that Plaintiff sent copies of the letter to Equifax.  *See id.*, D.E. 1 at 15-19.  In a letter to Toyota Motor

---

[1] The Court cites to the automatically generated ECF page number on the top of each page for ease of reference.

Credit Corp. and Lexus of Bridgewater dated August 11, 2018, Plaintiff disputed the repossession of a vehicle financed by Toyota, and stated that "continued reporting of this invalid claim on [his] credit reports will be considered a violation of the FDCPA and FCRA." *Id.*, D.E. 1 at 15 ("August 11, 2018, Toyota Letter").  The Complaint did not contain any factual allegations or exhibits concerning the Chase Auto, Macy's, or OneMain tradelines.

The next set of documents attached to the Complaint concerned Plaintiff's bankruptcy.  *See* Compl., Ex. B., D.E. 1 at 21-26.  In September 2018, Plaintiff contacted the Clerk of the United States Bankruptcy Court for the District of New Jersey to inquire whether the Clerk responded to requests for information from credit bureaus.  *See id.*, D.E. 1 at 24, 26.  On Plaintiff's letter dated September 6, 2018, there is an undated and unsigned handwritten notation stating that the "Court does not provide any information to credit agencies.  All bankruptcies are public information." *Id.*, D.E. 1 at 26.

The final relevant document attached to the Complaint was an incomplete letter from Equifax dated June 3, 2018.[2]  *See* Compl., Ex. C., D.E. 1 at 30-31 ("Equifax Dispute Letter").  The letter appears to be responsive to an unspecified dispute raised by Plaintiff.  Equifax wrote:

> If we were able to make changes to your credit report based on the information you provided, we have done so.  Otherwise, we contacted the company reporting the information to Equifax for them to investigate your dispute.
>
> In this situation:
>
> - We request that the reporting company verify the accuracy of the information you disputed;
> - We provide them with any relevant information and supporting documentation you provided us with the dispute to consider as part of the investigation; and
> - We request that they send Equifax a response to your dispute and update their records and systems, as necessary.

---

[2] Plaintiff included only the first and third pages of the four-page document.

3

> If your dispute involves a public record item, Equifax contacts a third party vendor to obtain the most recent status of the public record.

*Id.* at 30.  The letter also includes information regarding the "dispute results."  *Id.* at 31.  Equifax informed Plaintiff that "[t]he information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated."  *Id.*  The final portion of the document included a table of information pertaining to Equifax's reinvestigation of Plaintiff's bankruptcy.  *See id.*  It states that Equifax obtained information about Plaintiff's bankruptcy through LexisNexis's search of public records.  *Id.*  Equifax then stated that it "reviewed the bankruptcy information," which was reported as discharged.  *Id.*  On this document, Plaintiff circled labeled "Date Verified," which had been left blank.  *See id.*

Equifax moved to dismiss the complaint in lieu of filing an answer.  *See generally* Def.'s Mot. to Dismiss, Nov. 29, 2018, D.E. 6.  The thrust of Equifax's motion was that Plaintiff's Complaint implicated 15 U.S.C. § 1681i(a)—not 15 U.S.C. § 1681e(b) as alleged by Plaintiff—and that the Complaint failed to state a claim upon which relief may be granted because Plaintiff failed to plead a cognizable inaccuracy within the meaning of the FCRA.  *See id.* at 5-8, 10.  With respect to the Toyota tradeline in particular, Equifax averred that Plaintiff's claims relating thereto are barred by a prior release.  *Id.* at 8-9.

The District Court granted Equifax's motion.  *See* Order, Sept. 9, 2019, D.E. 17.  The Honorable Kevin McNulty, U.S.D.J., dismissed Plaintiff's claims related to the Toyota tradeline with prejudice on the basis that those claims were subject to claim preclusion.  *See id.*; Op. at 9-10, Sept. 9, 2019, D.E. 16.  Judge McNulty noted that the parties previously settled an action brought against Equifax wherein Plaintiff attested to the accuracy of some of the instant disputed allegations.  *See* Op. at 1, 10 (citing *Covington v. Equifax Info. Servs., Inc.*, No. 16-8002).  Judge

4

McNulty emphasized that Plaintiff "agreed to release all claims against Equifax and acknowledged the accuracy of his credit report as of September 19, 2017," which included information about the disputed Toyota tradeline. *Id.* at 1.

With respect to the claims arising from the reporting of the Chase Auto, Macy's and OneMain tradelines, Judge McNulty held that Plaintiff failed to allege facts showing that the information reported about him was inaccurate or was otherwise actionable under 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i. *Id.* at 9. His Honor explained that

> the complaint fails to make any factual allegations beyond an assertion that certain tradelines remain on Covington's credit report. Covington fails to state factually how, why, or in what manner the information about these tradelines is inaccurate. Covington's complaint suggests, and he argues in his opposition brief, that the accounts associated with the Chase Auto, Macy's, and OneMain Financial tradelines on his credit report may have been sold. But there is nothing improper under the FCRA by continuing to accurately list closed accounts so long as Equifax complies with § 168lc(a)(4). Covington does not claim that Equifax failed to comply with § 168lc(a)(4).
>
> Covington has therefore not alleged facts showing that the information reported about him concerning these tradelines is inaccurate or creates a materially misleading impression.
>
> Covington separately suggests that "the 'furnisher' was unable to verify the accounts or the 'furnisher' thereby had misrepresented to Equifax the status of the accounts in violation of Section 168 le(b)." But there are no factual allegations that Covington notified Equifax of a dispute concerning the Chase Auto, Macy's, and OneMain Financial tradelines. Nor are there any factual allegations to support a reasonable inference that Equifax failed to investigate and modify the allegedly inaccurate information.

Op. at 8-9 (internal quotation marks and citations omitted). Finally, Judge McNulty held that Plaintiff failed to state a claim under the FCRA in connection with his allegation that Equifax failed to verify the status of his bankruptcy. *Id.* at 10-11. His Honor found that Plaintiff did not allege any facts that suggest that Equifax failed to follow reasonable procedures to assure the

5

accuracy of that information. *Id.* at 11.  Judge McNulty dismissed these latter claims "without prejudice to the submission . . . of a properly supported motion to amend the complaint."  Order, D.E. 17.

Rather than proceeding with a motion that complies with Local Civil Rules 7.1, 7.2, and 15.1, Plaintiff simply filed a nine-count Amended Complaint.  In light of Plaintiff's status as a *pro se* litigant, the Court ordered that Equifax "may treat the proposed amended complaint . . . as a motion to amend, and may oppose it based on failure to state a claim or whatever other grounds may allegedly apply."  Order, D.E. 19.

In the amended pleading, Plaintiff alleges that Equifax published "incorrect and false information pertaining to plaintiff on or about June 3, 2018"—the date of the Equifax Dispute Letter.  Am. Compl. ¶ 9; *see also id.* D.E. 18 at 22-23.  Plaintiff avers that, in so doing, Equifax violated the FCRA and committed various state-law torts by

> failing to use and/or maintain reasonable procedures designed to avoid violations of [15 U.S.C. § 1681c] and other laws; failing to evaluate and/or re-evaluate any and all information; failing to authenticate information; disseminating such information, acting with malice . . . ; asserting, maintain[ing], publishing and otherwise communicating certain false information about plaintiff; willfully failing to verify the information before publishing it; . . . representing, publishing and otherwise communicating that certain false information about plaintiff was true; making untrue written and/or oral statements defaming, maligning and/or in other ways misrepresenting plaintiff and/or plaintiff's financial ability, status, competence, creditworthiness and/or life, publishing and/or otherwise communicating such incorrect and defamatory writing to third parties, including but not limited to Chase, Toyota Motor Credit, Lexus Financial Services, Macys, One Main Financial Services and a Bankruptcy; . . . failing to check the veracity and accuracy of the information published . . . , violating, *inter alia*, [15 U.S.C. §1681e(b)]; failing to follow reasonable procedures to assure maximum possible accuracy of the information on plaintiff, and in so operating its business as to cause the damages to plaintiff.

*Id.*¶ 10.  Based on the foregoing, Plaintiff asserts the following claims:  violations of the FCRA (Count One); defamation (Counts Two, Three, Four, Five, and Seven); common law fraud (Counts Six); intentional infliction of emotional distress (Count Eight); and negligent infliction of emotional distress (Count Nine).  *See id.* ¶¶ 11-38.

The proposed Amended Complaint does not contain any non-conclusory allegations regarding the inaccuracies that form the basis of the FCRA violations, defamatory statements, fraud, or tortious conduct.  In fact, the proposed Amended Complaint contains less specific allegations than its prior iteration.  The proposed Amended Complaint omits the allegations that Plaintiff requested that Equifax correct the disputed tradelines and bankruptcy.  *Compare* Compl. ¶¶ 5-7, D.E.1 *with* Am. Compl. ¶¶ 7-12.  It also omits the specific harms allegedly suffered by Plaintiff.  *Compare* Compl. ¶¶ 14-15 *with* Am. Compl. ¶ 13.

As he did before, Plaintiff purports to incorporate the contents of various communications to Equifax and third parties into the proposed Amended Complaint.  The first attachment is the letter that Plaintiff received from the FTC dated July 6, 2018, wherein the FTC referred Plaintiff to the Consumer Financial Protection Bureau.  *See* Am. Compl., D.E. 18 at 8.  Plaintiff did not include his direct communication to Equifax, however.  *See* Compl., D.E. 1 at 9.  The next attachment is a letter that Plaintiff sent to "Chase Auto" and a New Jersey car dealership dated August 11, 2018.  *See* Am. Compl., D.E. 18 at 11-12 ("Chase Auto Letter").  The Chase Auto Letter is nearly verbatim to the August 11, 2018, Toyota Letter.  Plaintiff therein disputed the repossession of a vehicle financed by Chase Auto, and stated that "continued reporting of this invalid claim on [his] credit reports will be considered a violation of the FDCPA and FCRA." *Id.*, D.E. 18 at 11.  The third attachment is the October 5, 2018, Equifax Letter concerning the Toyota tradeline.  *See id.*, D.E. 18 at 14-19.  The fourth attachment is letters to and from OneMain

Financial dated August 11, 2018, and September 10, 2018, respectively. *Id.*, D.E. 18 at 20-21 ("OneMain Letters"). Plaintiff therein requested validation of a debt, to which OneMain replied that Plaintiff's account was sold and has no outstanding balance. *See id.* There is no indication from Plaintiff's submissions that either the Chase Auto Letter or the OneMain Letters were ever brought to Equifax's attention. The last attachment is the incomplete Equifax Dispute Letter. *See id.*, D.E. 18 at 22-23.

### III. ANALYSIS

"Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The Court should freely give leave when justice so requires.'" *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (quoting Fed. R. Civ. P. 15(a)(2)). Notwithstanding that liberal standard, "[d]enial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Schumann v. AstraZeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014)). Equifax asserts that leave to amend would be futile. *See* Def.'s Opp. Br. at 3.

Futility is assessed by determining whether the proposed amendment can "withstand a renewed motion to dismiss.'" *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). In this analysis, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *City of Cambridge Retirement Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (quoting *In re Burlington Coat Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The inquiry is not whether the movant will ultimately prevail, but whether the proposed pleading sets forth "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). More specifically, the Court "accept[s] all factual allegations in the complaint as true and, examining for plausibility, 'determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (quoting *Bronowicz v. Allegheny County*, 804 F.3d 338, 344 (3d Cir. 2015)). The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

Although the Court liberally construes *pro se* pleadings, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court "nonetheless review[s] the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face,'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Ashcroft*, 556 U.S. at 678). The Court considers both the allegations in the complaint and the exhibits attached thereto in its analysis. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (stating that courts may consider documents that are integral to or explicitly relied on in the complaint on a motion to dismiss); *Lee v. Karaoke*, No. 18-6833, 2019 WL 2537932, at *3 (D.N.J. June 19, 2019) (considering materials outside of a *pro se* plaintiff's complaint to the extent that they "are consistent with the allegations in the complaint" (quoting *Bush v. City of Phila.*, 367 F. Supp. 2d 722, 725-26 (E.D. Pa. 2005)).

Equifax submits that Plaintiff failed to remedy the deficiencies regarding his FCRA claims—namely, Plaintiff's failure to identify what was inaccurate about the information Equifax reported about him. *See* Def.'s Opp. Br. at 3, 6-7. Equifax next contends that Plaintiff's state law claims are deficient as a matter of law because they are premised on the alleged publication of a false statement, which is absent from the proposed Amended Complaint. *See id.* at 7-8. In

9

Equifax's view, the letters that Plaintiff seeks to incorporate into his complaint fail to clarify the specifics of his allegations. Equifax notes the October 5, 2018, Equifax Letter concerns the Toyota account that was subject to the dismissal with prejudice. *Id.* at 3-4. With respect to the Chase Auto and OneMain Letters, Equifax notes that neither of those letters was addressed to Equifax or shed light on Equifax's reporting of Plaintiff's debts. *See id.* at 4.

The Court agrees with Equifax on all accounts and holds that granting Plaintiff leave to amend the complaint would be futile. At the outset, the Court denies leave to amend insofar as Plaintiff seeks to state any claim concerning the Toyota tradeline on the basis that those claims have now been the subject of two dismissals with prejudice. *See* Op. at 1, 9-10, D.E. 16; *Catlett v. N.J. State Police*, No. 12-153, 2013 WL 3949022, at *4 (D.N.J. July 31, 2013) (denying leave to amend claims that were subject to prior dismissal with prejudice). The Court now turns to each of the causes of action alleged in the proposed Amended Complaint.

### 1. Fair Credit Reporting Act (Count One)

Pursuant to the FCRA's statutory scheme, consumer reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014). The FCRA prescribes a regulatory framework to ensure the accuracy of information disseminated in consumer credit reports. *See Cortez v. Trans Union, LLC,* 617 F.3d 688, 706 (3d Cir.2010). The FCRA "require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information . . . with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Those "reasonable procedures" include, among other things, maintaining an

internal compliance system to ensure the accuracy of consumer information, 15 U.S.C. § 1681e, and maintaining procedures to allow a consumer to dispute and to correct inaccurate information, 15 U.S.C. § 1681i.

Plaintiff appears to allege that the Equifax Dispute Letter dated June 3, 2018 contains the allegedly incorrect and false information. *See* Am. Compl. ¶¶ 7, 9; *id.*, D.E. 18 at 22-23. As relevant to the FCRA, Plaintiff avers that Equifax

> fail[ed] to use and/or maintain reasonable procedures designed to avoid violations of Section 605 of the [FCRA] . . .; fail[ed] to evaluate and/or re-evaluate any and all information; fail[ed] to authenticate information; . . . fail[ed] to check the veracity and accuracy of the information published[;] wantonly, willfully, recklessly and intentionally fail[ed] to use reasonable care in the course of its business, violating, *inter alia*, [Section 607(b) of the FCRA]; [and] fail[ed] to follow reasonable procedures to assure maximum possible accuracy of the information on plaintiff . . . .

*Id.* ¶ 10.

The Court interprets the foregoing to implicate two provisions of the FCRA. It appears that Plaintiff alleges claims under 15 U.S.C. § 1681e(b) based on Equifax's failure to maintain and follow reasonable procedures to (1) avoid violations of 15 U.S.C. §1681c, and (2) verify and assure the accuracy of the information reported about him. Additionally, it appears that Plaintiff implicitly relies on 15 U.S.C. § 1681i insofar as he asserts that Equifax failed to evaluate, authenticate, or otherwise reinvestigate the accuracy of the disputed information.

The inclusion of inaccurate information is a prima facie element of a claim under both 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i. *See* 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."); 15 U.S.C. § 1681i(a)(1)(A) (prescribing the scope of the reinvestigation required "in

[the] case of disputed accuracy"); *Angino v. Trans Union LLC*, 784 F. App'x 67, (3d Cir. 2019) (holding that plaintiffs "must show that their credit reports contain inaccurate information" to prevail on Section 1681e(b) and 1681i(a) claims).

Here, just as with his initial pleading, the proposed Amended Complaint "fails to state factually how, why or in what manner" any information Plaintiff disputes is inaccurate. Op. at 8, D.E. 16. None of the documents annexed to the Complaint sheds light on Plaintiff's allegations. The FTC Letter merely refers Plaintiff to the Consumer Financial Protection Bureau. *See* Am. Compl., D.E. 18 at 8. In the Chase Auto Letter, which was not addressed to Equifax, Plaintiff disputes the repossession of a vehicle financed by Chase Auto. *Id.*, D.E. 18 at 11-12. The Court cannot, without some further explanation from Plaintiff, infer from this letter that inaccurate information was included in any Equifax credit report. In the OneMain letter, Plaintiff notified OneMain of his disputed account and required validation of the debt owed. *See id.*, D.E. 18 at 20. OneMain responded that he had no balance on the debt, and that the debt had been sold to a third-party. *See id.*, D.E. 18 at 21. Again, the proposed Amended Complaint and exhibits do not signal to the Court what was inaccurate about the OneMain account.

Finally, the proposed Amended Complaint does not contain a complete copy of the Equifax Dispute Letter, leaving the Court with no way to discern the nature of Plaintiff's dispute. To the extent that Plaintiff contends that Equifax failed to verify the accuracy of his bankruptcy, there remains no "factual allegations to support a reasonable inference that Equifax failed to investigate and modify [any] allegedly inaccurate information." Op. at 9, D.E. 16. To the contrary, the Equifax Dispute Letter indicates that Equifax utilized LexisNexis to compile public record information concerning Plaintiff's bankruptcy, and that Equifax reviewed that information in turn. *See id.*, D.E. 18 at 23.

2. **State Law Claims**

The Court now turns to Plaintiff's newly pleaded state law claims, over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).[3]

    a. **Defamation Claims**

Plaintiff first seeks relief for libel (Count Two); "libel *per se*" (Count Three); slander (Count Four); "slander *per se*" (Count Five); and defamation (Count Seven). *See* Am. Compl. ¶¶ 15-25, 33-34. None of the aforementioned Counts contains any specific factual content; rather, Plaintiff purports to repeat and reallege the preceding paragraphs of the Complaint. *See, e.g.*, *id.* ¶¶ 18-19 (incorporating prior allegations and stating that "[a]s a result of defendants' actions, plaintiff has been libeled and sustained damages thereby"). Equifax submits that these claims are "all premised on upon Equifax's alleged publication of a false statement, and, specifically, the same allegedly false credit reporting upon which he purports to base his FCRA claim." Def.'s Opp. Br. at 7. Equifax contends that these claims must be dismissed because Plaintiff "fails to make any factual allegations detailing what Equifax allegedly reported, to whom Equifax alleged[ly] published its reporting, or why such reporting was inaccurate." *Id.* The Court agrees.

"A defamation action, which encompasses libel and slander, affords a remedy for damage to one's reputation." *Dairy Stores, Inc. v. Sentinel Publ'g Co., Inc.*, 516 A.2d 220, 224 (N.J. 1986).

---

[3] Plaintiff is a New Jersey resident and Equifax is a Georgia corporation with its principal place of business in Atlanta. *See* Am. Compl. ¶¶ 2-3. As for the amount in controversy, Plaintiff demands $50,000.00 on each of his fraud, defamation, and emotional distress claims. *See id.*, Wherefore Clause. Nothing in the Amended Complaint or Equifax's opposition papers suggests that Plaintiff lacks a good faith belief that his claims meet the statutory threshold for diversity jurisdiction. *See Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (holding that dismissal is warranted only if appears to a legal certainty that the amount claimed, if made in good faith, does not exceed the requisite jurisdictional amount); *Suber v. Chrysler Corp.*, 104 F.3d 578, 588 (3d Cir. 1997) (holding that claims may be aggregated so long as they are not alternative bases of recovery for the same harm).

"A claim for defamation has three elements: '(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.'" *Read v. Profeta*, 397 F. Supp. 3d 597, 650 (D.N.J. 2019) (quoting *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009)). A written defamatory statement constitutes libel, whereas an oral defamatory statement constitutes slander. *See id.* (citing *W.J.A. v. D.A.*, 43 A.3d 1148, 1153 (N.J. 2012)). Libel *per se* is "a writing that is defamatory on its face, which his distinguished from a writing that is defamatory solely in light of extrinsic facts . . . ." *Gillon v. Bernstein*, 218 F. Supp. 3d 285, 302 (D.N.J. 2016) (citing *Lawrence v. Bauer Publ'g & Printing Ltd.*, 446 A.2d 469, 473 (N.J. 1982). There are four recognized categories of slander *per se*: "statements that impute (1) commission of a crime, (2) contraction of a loathsome disease, (3) occupational incompetence or misconduct, and (4) unchastity of a woman." *Id.* (quoting *Ward v. Zelikovsky*, 643 A.2d 972, 977 (N.J. 1994)).

In order to overcome an assertion of futility, a proposed pleading alleging defamation must include "facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough." *Crawford v. W. Jersey Health Sys. (Voorhees Div.)*, 847 F. Supp. 1232, 1238 (D.N.J. 1994) (quoting *Zoneraich v. Overlook Hospital,* 514 A.2d 53, 63 (N.J. Sup. Ct. App. Div. 1986)). Here, the proposed Amended Complaint does not contain sufficient factual material concerning any statements that Equifax may have made regarding Plaintiff. Instead, Plaintiff impermissibly relies on legal conclusions. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). The Court cannot discern what communications, whether written or oral, give rise to Plaintiff's proposed defamation, slander, and libel claims. *See Fidanzato v.*

14

*Somerset, Hunterdon, and Warren Ctys. Viciniage 13*, No. 11-5132, 2012 WL 4508008, at *12 (D.N.J. Sept. 28, 2012) (dismissing claims for slander and slander *per se* on the basis that "[n]ot once did Plaintiff explain which statements she alleges were slanderous").

### b. Common Law Fraud (Count Six)

Count Six sounds in common law fraud. *See* Am. Compl. ¶¶ 26-32. There are five *prima facie* elements of a common law fraud claim under New Jersey law: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). Fraud claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which "requires the plaintiff to 'state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.'" *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 486 (D.N.J. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* at 486-87 (quoting *Frederico*, 507 F.3d at 200).

Plaintiff avers that Equifax falsely "represented to [him] that it would accurately compile, maintain, and/or disseminate information," *id.* ¶ 27, and that he relied on that representation to his detriment, *see id.* ¶¶ 29-32. As repeatedly mentioned, the proposed Amended Complaint does not specify what, if anything, in Plaintiff's credit report was inaccurate. It also fails to set forth any factual matter regarding how Plaintiff relied on any putative misrepresentation to his detriment. Absent any allegations substantiating his generalized statements, Plaintiff's common law fraud

claim does not pass muster under Rule 8 and Rule 9(b)'s pleading standards. *See Iqbal*, 556 U.S. at 678 (holding that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation"); *Twombly*, 550 U.S. at 557 (holding that a complaint is deficient if it tenders "naked assertion[s]" devoid of "further factual enhancement").

### c. Intentional and Negligent Infliction of Emotional Distress (Counts Eight & Nine)

To state a *prima facie* claim of intentional infliction of emotional distress, Plaintiff must allege the following:

> 1. that defendant acted intentionally or recklessly, both in committing the alleged tortious acts and in producing emotional distress;
> 2. that defendant's conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency;
> 3. that defendant's actions were the proximate cause of the emotional distress; and
> 4. that the emotional distress suffered was so severe that no reasonable person could be expected to endure it.

*Powell v. Verizon*, No. 19-8418, 2019 WL 4597575, at *10–11 (D.N.J. Sept. 20, 2019) (citations omitted). The proposed Amended Complaint's conclusory allegations fall short; it contains no factual allegations that would permit this Court to infer that Equifax intended to cause Plaintiff harm, that its conduct was extreme or outrageous, or that Plaintiff's emotional distress was severe. Plaintiff failed to plead any factual matter that plausibly suggests that Equifax's alleged conduct rises to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 864 (N.J. 1988). Nor does Plaintiff's unspecified "emotional distress and other diminishments of [his] quality of life" amount to the type of severe harm necessary to state a claim. Am. Compl. ¶ 36; *see also Buckley*, 544

A.2d at 864  (holding that the plaintiff's loss of sleep, aggravation, headaches, and embarrassment are insufficient as a matter of law to state a claim for intentional infliction of emotional distress).

"To prove a claim of negligent infliction of emotional distress, a plaintiff must establish: (1) a duty of care; (2) breach of that duty; (3) causation; and (4) damage in the form of severe emotional distress that was reasonably foreseeable." *Jovic v. Legal Sea Foods, LLC*, No. 16-1586, 2018 WL 5077900, at *6 (D.N.J. Oct. 18, 2018) (internal quotation marks and citation omitted). Assuming that Equifax owed Plaintiff a duty to report his information accurately, Plaintiff has failed to allege a plausible breach of that duty in light of his failure to plead factual matter regarding the reporting of an inaccurate statement.

### 3. Denial of Leave to Amend Shall be with Prejudice

Although Plaintiff has sought to plead several new theories under New Jersey common law, the proposed Amended Complaint contains the same deficiencies that necessitated the dismissal of Plaintiff's original pleading—the absence of any allegation identifying an inaccurate statement in his credit report.  In fact, the proposed Amended Complaint is even more threadbare than its original iteration.  Given that the Court has now twice found that Plaintiff failed to allege an inaccurate statement, the Court will deny Plaintiff another opportunity to amend the Complaint. *See United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."); *Barnard v. Verizon Commc'ns, Inc.*, 451 F. App'x 80, 87 (3d Cir. 2011) (holding that the district court did not abuse its discretion in denying leave to file a third amended complaint where plaintiffs presented "claims that were well below the governing pleading standards").

### IV. CONCLUSION

For the reasons stated herein, the Court will deny Plaintiff leave to file the proposed Amended Complaint. An appropriate order will follow.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: April 20, 2020